(83 N. W. Rep. 869.)

---

## State of North Dakota *vs.* Andrew Ryan.

Opinion filed October 17, 1900.

**Forgery—Indictment.**

A written instrument, which shows upon its face that it neither creates nor purports to create' any liability on the part of any one, is not the subject of forgery, unless extrinsic facts exist which give to it that character.

**Void Instruments—Extrinsic Facts.**

An indictment for forging an instrument, which upon its face does not purport to create any liability, must allege the extrinsic facts which are relied upon to give such instrument validity as creating an obligation.

**Character of Instrument—Uttering and Publishing.**

The defendant is charged with the crime of forgery committed by uttering and publishing as true a falsely made and forged instrument, knowing the same to be false and forged, the same being a written certificate purporting to be made by a township clerk, reciting that 1,000 gopher tails had been presented to him by one Stewart, and that he had destroyed them. *Held,* that said certificate does not on its face either create, or purport to create, any liability, or create any right by which any one may be affected, and, standing alone, is not the subject of forgery.

County Commissioners—Invalid Resolution.

>The indictment sets out at length a resolution of the county commissioners offering a bounty, payable from the general county fund, for the destruction of gophers, and making provision for the payment thereof out of such fund upon the production of a certificate from a township clerk showing the facts of presentation, counting, and destruction. *Held,* that said resolution is entirely void, for the reason that it is not within the powers granted to county commissioners either by organic or statutory law to offer bounties from the general county fund. *Held,* further, that the pleading of such void resolution in the indictment does not give legal force and effect to the certificate of the township, which the defendant is accused of uttering, as creating or purporting to create any liability whereby any one may be affected.

Indictment Insufficient for Uttering.

>The allegations of the indictment examined, and found insufficient to charge the offense of uttering a forged instrument, for the reason that it appears upon the face of the indictment, by the extrinsic facts pleaded, that the instrument alleged to have been uttered by the accused neither created, nor purported to create, any liability.

Appeal from District Court, Sargent County; *Lauder,* J.

Andrew Ryan was convicted of forgery, and appeals.

Reversed.

*T. A. Curtis, E. W. Bowen,* and *Charles E. Wolfe,* for Appellant.

The defendant is not charged with having made the instrument the basis of this accusation, but is charged simply with uttering an instrument which someone else had made, and which the indictment says was falsely made and forged, yet purported to be the act of the person whose name was signed thereto. The defendant could not be convicted in the absence of evidence showing that the instrument was not made by Harris, or if made by him was fraudulently and materially altered after it was made, and the defendant could not, from the language of this indictment, know which of these contingencies he was called upon to meet. The indictment in this regard is not sufficiently definite and certain. *Peo.* v. *Merriam,* 28 Mich. 255; *State* v. *Reibe,* 7 N. W. Rep. 140. No forgery can be predicated upon an instrument which is void on its face. 8 Am. & Eng. Enc. L. 461, 2 East's P. C. 953. Every one is presumed to know the law governing the instrument, which law enters into and forms a part of such instrument, and if the law will render the instrument void, the false making of such instrument is not forgery. *Johnson* v. *State,* 23 Wis. 504; *Peo.* v. *Shawl,* 9 Cow. 778; *State* v. *Lytle,* 64 N. C. 255; *Peo.* v. *Harrison,* 8 Barb. 560; *Howell* v. *State,* 37 Tex. 591; *Peo.* v. *Mann,* 75 N. Y. 484; *Roode* v. *State,* 5 Neb. 475; *Peo.* v. *Galloway,* 17 Wend. 540; *Barnum* v. *State,* 15 O. 717. An indictment for forgery must show on its face that the instrument is one which, if genuine, would establish or defeat some claim, impose some duty, create some liability, or work some prejudice to another in his rights. *Peo.* v. *Tomlinson,* 35 Cal. 503; *Barnum* v. *State,* 15 O. 717; *Territory* v. *DeLena,* 41 Pac. Rep. 618; *Waterman* v. *People,* 67 Ill. 91. The indictment for forgery must

set forth an instrument which, on being described, on its face appears to be naturally calculated to have some legal effect, also extrinsic facts must be offered showing such legal effect. *State* v. *Cook,* 57 Ind. 574; *State* v. *Wheeler,* 19 Minn. 98; *State* v. *Briggs,* 34 Vt. 501; *Rollins* v. *State,* 22 Tex. App. 521; *Murry* v. *State,* 50 S. W. Rep. 521; *Hendricks* v. *State,* 26 Tex. App. 176. The commissioners had no authority to pass the resolution set forth in the indictment. The same is contrary to express law and void. § § 1974 and 1899, Rev. Codes. The certificates of officers not authorized or required by law have no more force or effect than the certificate of a private person. *Smith* v. *Lawrence,* 2 S. D. 202; *Downing* v. *Brown,* 3 Colo. 590; *Wood* v. *Nissen,* 2 N. D. 26; *Goose River Bank* v. *Gillmore,* 3 N. D. 188. The forgery of a certificate imposing no duty or conferring no right is no offense. *Rembert* v. *State,* 53 Ala. 467. There must be both the intention and the power to defraud or the offense is not committed. *Dixon* v. *State,* 81 Ala. 61, 1 So. Rep. 69; *Williams* v. *State,* 8 So. Rep. 825; *Territory* v. *DeLena,* 41 Pac. Rep. 618; *Raymond* v. *Peo.* 30 Pac. Rep. 504; *Merkel* v. *Berks County,* 81 Pa. St. 505; *State* v. *Brett,* 40 Pac. Rep. 873. The prosecution failed to prove the resolution set forth in the indictment, as laid, and the variance is fatal. *Hazlitt* v. *State,* 7 N. W. Rep. 115; *State* v. *Fallon,* 2 N. D. 510; *Sharley* v. *State,* 54 Ind. 188; *Sutton* v. *State,* 79 N. W. Rep. 154; *Robinson* v. *State,* 43 S. W. Rep. 526. The judgment should be reversed and the defendant discharged because no prosecution can be founded upon this certificate. *Waterman* v. *Peo.* 67 Ill. 91; *State* v. *Wilson,* 28 Minn. 52.

*P. H. Rourke, S. M. Lockerby,* and *J. E. Bishop,* for respondent.

A variance between the indictment and proof is not material unless it is such as might expose the defendant to the danger of being put twice in jeopardy for the same offense. Abbott's Tr. Bf. 411; *Harris* v. *People,* 64 N. Y. 148; Rice on. Crim. Ev. 170. To be the subject of forgery it is not necessary that the instrument should have actual, legal efficacy. It is sufficient that, if genuine, it may have such apparent efficacy, that although its invalidity may be established by extrinsic facts, nevertheless, it may be capable of effecting a fraud and therefore be a subject of forgery. *State* v. *Van Auken,* 68 N. W. Rep. 457; *State* v. *Johnson;* 96 Am. Dec. 158, 13 Am. & Eng. Enc. L. (2d Ed.) p. 1093; *Rembert* v. *State,* 25 Am. Rep. 693; *State* v. *Vineyard,* 40 Pac. Rep. 173. An instrument valid on its face may be the subject of felonious uttering, although collateral facts may exist that would render it absolutely void if genuine. *Peo.* v. *Rathburne,* 21 Wend. 509; *Peo.* v. *Galloway,* 17 Wend. 540; *State* v. *Johnson,* 96 Am. Dec. 158; *State* v. *Hilton,* 35 Kan. 339. An instrument void as being against public policy or *ultra vires* may be subject to forgery. *People* v. *Monroe,* 35 Pac. Rep. 326; *People* v. *James,* 110 Cal. 155.

YOUNG, J. The defendant was convicted of the crime of forgery

in the fourth degree, and sentenced to confinement in the penitentiary for a period of one year. The only question which we need to consider is the sufficiency of the indictment on which the defendant was tried and convicted. Counsel for defendant attacked it in the trial court on the ground that "it does not state facts sufficient to constitute a public offense," and urges the same objection on this appeal as one of several grounds for asking a reversal. The indictment is as follows: "The Grand Jury of the State of North Dakota, in and for the County of Sargent, upon their oaths present that heretofore, to-wit, on the fifteenth day of June, in the year of our Lord one thousand eight hundred and ninety-nine, at the County of Sargent, in the State of North Dakota, one Andrew Ryan, late of said County of Sargent, and said County of Sargent and state aforesaid, did commit the crime of uttering and publishing as true a falsely made and forged instrument, knowing such instrument to be falsely made and forged, committed as follows: That heretofore, and before the commission of the offense hereinafter mentioned, to-wit, on the thirteenth day of March, in the year A. D. 1899, the County of Sargent was, and still is, one of the duly organized and existing counties in and of the State of North Dakota. That at the village of Forman, the county seat of said Sargent County, on the thirteenth day of March, aforesaid, the duly elected, qualified, and acting board of county commissioners of said Sargent county, in legal meeting assembled, passed, adopted, and published a resolution in the following words and figures, that is to say: 'Be it resolved, that the County of Sargent allow and offer a gopher bounty for the year 1899 for each gopher killed between the first day of April and the first day of July, 1899; that said bounty shall be two (2) cents for each gopher killed, the same to be paid out of the general county fund upon the warrant of the county auditor, provided that the county auditor shall issue such warrant upon the certificate of the township clerk of each township wherein such gophers are killed; that said town clerk certify to the number of tails of such gophers killed which were presented to and destroyed by such town clerk. Dated at Forman, this thirteenth day of March, A. D. 1899.' That such resolution has never been repealed or rescinded. That at all the times in said resolution mentioned, to-wit, between the first day of April and the first day of July, A. D. 1899, both days inclusive, one George A. Harris was the duly elected, qualified, and acting township clerk of the township of Vivian, one of the duly organized and existing civil townships of the County of Sargent, aforesaid. And the grand jurors aforesaid, upon their oaths as aforesaid, do further present that the said Andrew Ryan, at the time and place aforesaid, to-wit, on the fifteenth day of June, in the year A. D. 1899, at the County of Sargent and state aforesaid, and within the jurisdiction of this court, feloniously did utter and publish as true a certain false made and forged instrument, knowing such instrument to be falsely made and forged, purporting to be an official certificate issued by the said George A. Harris, town-

ship clerk of the township aforesaid, to the effect that one J. A. Stewart had presented to said George A. Harris, township clerk of the township of Vivian aforesaid, one thousand (1,000) gopher tails, and purporting to be issued by the said George A. Harris, township clerk of the said Vivian township aforesaid, which said falsely made and forged certificate is in the words and figures, that is to say: 'Sargent County, North Dakota. Office of the Town Clerk of Vivian Township. To W. S. Baker, County Auditor: This is to certify that J. A. Stewart has presented to me one thousand (1,000) gopher tails, which have been destroyed by me this day. Dated at Vivian, this twelfth day of June, 1899. George A. Harris, Township Clerk.' That after, and on the fifteenth day of June, 1899, at the county and state aforesaid, said falsely made and forged certificate was by the said Andrew Ryan, then and there knowing such instrument to be falsely made and forged, presented to the said W. S. Baker, county auditor as aforesaid, of Sargent County aforesaid, for payment, with intent to defraud said Sargent County; this contrary to the form of the statute," etc.

The indictment is founded on § 7438 and subdivision 2 of § 7430 of the Revised Codes, which read:

"§ 7438. Every person who, with intent to defraud, utters or publishes as true, any forged, altered or counterfeited instrument, or any counterfeit gold or silver coin, the forging, altering or counterfeiting of which is hereinbefore declared to be punishable, knowing such instrument or coin to be forged, altered or counterfeited, is guilty of forgery in the same degree as if he had forged, altered or counterfeited the instrument or coin so uttered, except as in the next section specified."

"§ 7430. Every person who, with intent to defraud, falsely makes, alters, forges or counterfeits: * * * (2) Any instrument or writing, being or purporting to be the act of another, by which any pecuniary demand or obligation is, or purports to be created, increased, discharged or diminished, or by which any rights or property whatever, are or purport to be transferred, conveyed, discharged, diminished or in any manner affected, the punishment of which is not hereinbefore prescribed, by which false making, altering, forging or counterfeiting, any person may be affected, bound or in any way injured in his person or property, is guilty of forgery in the third degree."

§ 7439 reduces the offense to the fourth degree when it appears that the instrument uttered was innocently received by the accused for a good and valuable consideration, and without any circumstances to justify a suspicion of its being forged or counterfeited.

The jury found that the facts brought the defendant within the foregoing sections, and accordingly returned a verdict of forgery in the fourth degree.

Counsel for defendant broadly contend that the written certificate set out in the indictment as the basis of this prosecution is not such an instrument as can be made the subject of forgery, and conse-

quently that its utterance by the defendant cannot subject him to the penalties provided for those who utter forged instruments. It certainly requires no argument to show that if counsel's first proposition is correct, namely, that a conviction for forgery of the certificate could not be sustained, likewise a conviction for uttering it could not be upheld; for it is entirely obvious that prosecutions under § § 7438, 7439, supra, are limited to the utterance of instruments which are the subject of forgery,—that is, to forged instruments.

It is obvious, too, on inspection, that the certificate in question, standing alone, is not a subject of forgery. It was not made pursuant to statutory authority or express law. Further, and with particular reference to § 7430, supra, under which the indictment is drawn, we may say that on its face and by its language it neither purports to nor actually increases, discharges, or diminishes any pecuniary demand or obligation, neither does it purport to transfer, convey, discharge, or diminish any rights or property or affect them in any manner to the prejudice of any person. It merely recites that the maker of the certificate has received 1,000 gopher tails from J. A. Stewart, and has destroyed them. There is absolutely nothing on the face of the certificate to indicate that, as a consequence of the existence of the facts so certified, any rights accrue to any one, or that any person or municipality incurs any liability by reason thereof. Standing alone, on the strength of its own recitals, it would not support a prosecution for forgery; for, as a genuine writing, it neither creates, nor purports to create, any liability. This is properly conceded by counsel for the state. It is contended, however, on the part of the prosecution, that while, as a general rule, an instrument invalid on its face is not the subject of forgery, because such an instrument has not the legal capacity to effect fraud, yet that an instrument which does not appear to have any validity upon its face may be shown to have validity by extrinsic facts, and so become the subject of forgery, and that an indictment describing such an instrument, and alleging sufficient extraneous facts to establish its validity as an instrument creating or purporting to create an obligation or liability, will be sustained. This contention, we think, correctly states the law, and it is supported by the authorities. In *State* v. *Wheeler*, 19 Minn. 98, the court said: "As an instrument, to be the subject of an indictment for forgery, must either appear on its face to be, or be in fact, one which, if true, would possess some legal validity (2 Bish. Cr. Law, §503), so, if it does not so appear on the face of the instrument set out in the indictment, facts must be averred which will enable the court to see that, if it were genuine, it would possess such validity." See, also, *People* v. *Shall*, 9 Cow. 778; *People* v. *Harrison*, 8 Barb. 560; *State* v. *Briggs*, 34 Vt. 501.

Counsel for the state contend that, by pleading the resolution passed by the county commissioners authorizing the payment of a bounty for the destruction of gophers, and providing for payment

out of the county general fund upon the production to the county auditor of a certificate like that here in question, validity is given to the certificate, so as to make it the basis of a legal demand against the county. If this contention is true, if the certificate, when considered in connection with the resolution of the county commissioners, either creates, or purports to create, a liability on the part of the county, then it must me conceded that the instrument is subject to forgery. A similar certificate was in question in *State* v. *Johnson*, 26 Ia. 407, 96 Am. Dec. 158. In that case the court said: "It is an instrument which, if genuine by the legitimate action of the proper authorities, would be received, and, according to the averments of the indictment, was to be received, as legal proof of a liability." The case just referred to is in point only to the extent of showing that such an instrument as that here in question may be the subject of a prosecution for forgery when supported by averments of sufficient extrinsic facts as to give it validity, and goes no further. It is carefully pointed out in the opinion that the legislature of that state had granted the supervisors the power to offer bounties, and had designated certain officers to make certificates like that here in question. That court further said: "From this legislation, and looking to the language of the indictment, it seems that the board had the power to and did undertake to pay 15 cents on each gopher scalp produced and properly destroyed. It is also clear, and not denied, that this justice, Burns, had the power to efface and destroy such scalps. He had the power, as such officer, by the terms of the statute, and the indictment charges in express words that he was authorized thereto by the board, and also to issue his certificate of such counting and destruction; said certificate being received and taken by the board as legal proof of such counting for the purpose of issuing warrants," etc. The conclusion reached by the court in the above case, that the certificate was subject to forgery, rested upon two grounds: First, that the certificate was issued under authority of law; second, that had it been genuine it would have afforded legal proof of a liability on the part of the county. In the case at bar, however, counsel for defendant challenge the validity of the resolution of the county commissioners, which is set out at length in the indictment for the purpose of giving validity to the certificate. It is their contention that the resolution on its face not only fails to give any legal effect to certificates issued by township clerks pursuant thereto, but shows affirmatively that such certificate, and the resolution itself, are entirely void. To this view we are compelled to yield assent. It is well settled that counties cannot enter into contracts which are not expressly or impliedly authorized by statute or organic law, and that agreements entered into in excess of such authority are void. Further, that the authority of county commissioners must be found in the statute in express words or by fair implication. *Lebcher* v. *Board*, 9 Mont.. 315, 23 Pac. Rep. 713; *Hawk* v. *Marion County*, 48 Ia. 472; *Edwards County* v. *Jennings*, (Tex. Civ. App.) 33 S. W. Rep. 585, 1 Dill. Mun. Corp. § 25. In

*Lebcher* v. *Board,* supra, it was said: "An individual may contract as to lawful subjects as he pleases. 'Municipal corporations or public officers are bound by the law. They are authorized by the law of their creation to make certain contracts. They are creatures of the law, and not of nature. They have not natural rights, but only rights given by law. Their contracts obtain validity only by force of the law authorizing their making. It follows that, if they make contracts that the law does not empower them to enter into, there is no authority for such contract, nothing for it to stand upon, and it falls of its own weight. It is void. * * * Persons contracting with such artificial creations of the law, as municipal corporations and public officers, are charged with notice of the character and constitution of the entity with which they deal. They know the law, and know what are valid acts of such artificial persons. They contract at their peril." See the authorities cited in the opinion. There is no statute in this state authorizing county commissioners to contract for the payment of bounties for the destruction of gophers out of the county general fund, or to incur a general indebtedness against the county for such purposes. The resolution, then, is not merely irregular, but is void upon its face.

Specific authority has been given by the legislature to county commissioners to create a "gopher destruction fund" from taxes derived exclusively from a tax upon real estate. This fund, when brought into existence, is subject to their control. This is found in § 1322, Rev. Codes, which reads: "The board of county commissioners of any county in this state may, at any time fixed by law for the levy and assessment of taxes, levy a tax of not exceeding two mills on the dollar of the assessed valuation, upon all real estate in such county, the proceeds of which shall be used solely for the purpose of promoting the destruction of gophers in such county. The fund provided to be raised in accordance with this section shall be denominated the 'Gopher Destruction Fund,' and shall be kept separate and distinct by the county treasurer, and shall be expended by and under the direction and control of the board of county commissioners at such time, and in such manner, as is by such board deemed best to secure the abatement and extinction of the gopher pest." It was within the power of the board to proceed under the foregoing section, and to levy a tax upon the real estate of their county at the time and within the limit provided by said section. Had this been done, there would have been a fund in reference to which they were authorized to contract for the payment of bounties, and it would then have been within their power to determine that certificates like that in question should be received as legal proof of the liability of such fund. Had that been done here, as in the Iowa case, the certificate in question would have been a subject of forgery. But in fact no tax was levied upon the real estate of the county, or at all, which is clearly a condition precedent to the existence of any authority under said section. On the contrary, the resolution shows upon its face that they were attempting to pay the bounty out of the gen-

eral county fund derived from taxes levided upon all classes of property. Not only is the resolution void, for the reason that in its very language it attempts an unlawful diversion of county funds, but the means provided for extracting the funds from the county treasury are in violation of express statutory provisions. Following the direction of the resolution,—and that appears in the evidence to have been done in this case,—the county auditor would, upon the presentation of one of these certificates, issue a warrant upon the general county fund, and the county treasurer would pay it. The lawmaking power of the state has not seen fit to grant to county commissioners unrestricted authority as to county funds. On the contrary, the manner of disbursement has been the subject of express legislation. § 1899, Rev. Codes, provides, among other things, that "all orders made by the board, and all warrants drawn on the county treasurer, except warrants for salaries of county officers, shall be signed by the chairman of the board and attested by the auditor." This requirement is again repeated in § 1919, which further requires that the county seal shall be affixed, and that it shall designate the fund upon which it is drawn. See, also, § 1963. These sections are not modified, in our opinion, by § 1974, which requires the county auditor to issue warrants. The fact that he may issue them does not give them validity, where there is also the additional requirement that the chairman of the board of county commissioners shall sign them. We are entirely clear that the resolution was void on its face, and accordingly imparted no validity, real or apparent, to the certificate of the township clerk made in pursuance thereof. Had the certificate set out in the indictment been genuine in every particular, it would not have afforded legal proof of a liability on the part of the county or have purported to have done so. A forged certificate would have been of as much legal efficacy as a genuine one. Neither in fact could, under the law, create any liability whatever. With the moral aspect of defendant's acts we have nothing to do. Our duty is restricted to determining the sufficiency of the indictment. Having reached the conclusion that the certificate which defendant is charged with uttering is not the subject of forgery, it follows that the judgment of conviction must be reversed; and it is so ordered. All concur.